UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL D. PETERSON,

       Plaintiff,

vs.                                                                    Case No.

AETNA LIFE INSURANCE                          HON.
COMPANY,

       Defendant.

_____

Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:  616-235-2300
Facsimile:  616-459-0137
Email:  thaney@troyhaneylaw.com

_____

## COMPLAINT

Plaintiff, Cheryl J. Peterson, by her attorney, Troy W. Haney of Haney Law Office, P.C., and for her complaint against Defendant, Aetna Life Insurance Company, states as follows:

### Nature of Action and Jurisdiction

1.  This is a civil complaint brought by Plaintiff, Cheryl Peterson ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendant to provide certain disability insurance benefits in amounts and at the coverage levels promised and for an accounting, recovery of damages,

costs, and attorney fees incurred as a consequence of Defendant's breaches of its obligations and duties under ERISA as detailed herein.

2.     This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3.     Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

**Parties and General Allegations**

4.     At all relevant times, Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the "UPS National LTD Plan" ("the Plan") provided by United Parcel Service, Inc. ("UPS"), to its eligible employees, including the Plaintiff, administered by The Hartford Financial Services Group, Inc. ("The Hartford") and funded by an insurance policy issued by Aetna Life Insurance Company ("Aetna") to UPS, for group disability benefits as group policy no. GP-863204-GID.

5.     At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by UPS and funded by the above-referenced insurance policy issued by Aetna. As such, Aetna is the proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6.     At all relevant times, Defendant was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Defendant acted as a fiduciary for the Plan and exercised authority and control over the payment of long term disability "LTD" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant, therefore, functioned as a fiduciary for claims procedure purposes.

## **Facts**

7.    The Plaintiff began full-time employment with the UPS as a Package Car Driver ("truck driver") beginning in 1987.

8.    In approximately 2009, the Plaintiff's UPS vehicle was rear-ended, and the Plaintiff sustained injuries to her neck and back at the time. However, with conservative therapy and medication, the Plaintiff was able to return to work despite residual symptoms until her last day of work on August 31, 2018.

9.    The Plaintiff has been diagnosed with the following medical conditions:

- L1-L2: – Posterior disk bulge. Minimal right sided neural foraminal narrowing.
- L2-L3: Broad based posterior disk bulge. Mild spinal canal narrowing. Minimal left sided neural foraminal narrowing.
- L3-L4: Broad based posterior disk bulge. Mild spinal canal stenosis. Mild bilateral neural foraminal narrowing.
- L4-L5: Broad based posterior disk bulge. Mild spinal canal stenosis. Mild right sided neural foraminal narrowing.
- L5-S1: Facet arthritic changes. Posterior disc bulge. – Arthritic changes, mild at the sacroiliac joints. Conus medullaris is at L1.
- Spinal canal stenosis L4-5
- Lumbar Spondylosis with myelopathy
- Lumbago with sciatica
- Moderate spinal canal stenosis
- Mild spinal canal stenosis L5-S1
- Myalgia
- Chronic pain
- Trochanteric bursitis left hip
- Insomnia
- Anxiety, due to physical pain.

10.    Due to the above-described medical conditions, the Plaintiff has chronic low back pain, right groin pain, hip pain, right buttock pain, and right knee pain. Movements such as bending, lifting, twisting, or driving all cause pain. The Plaintiff has also been prescribed narcotic pain medications, undergone diagnostic facet injections, joint injections, left

trochanter bursa injections, and a facet rhizotomy – but none of these methods of therapy have provided her sufficient pain relief.

11.    As a result of the Plaintiff's medical conditions and the associated symptomatology, the Plaintiff is only able to perform activities of daily living (i.e. washing dishes, sweeping floors, vacuuming) for about 3-5 minutes at a time, and then she must lay down for 20 minutes thereafter. The Plaintiff is also unable to perform yardwork, and she requires help to shovel snow from her driveway and walkways to enter and exit from her home, which is an essential and significant activity due to the amount of snowfall that occurs at the Plaintiff's residence in the Upper Peninsula of Michigan. The Plaintiff is also no longer able to use her wood stove in her basement due to the stairs, and the requirement of bending, reaching, and lifting heavy pieces of wood into the stove is too painful.

12.    In accordance with her employment contract the Plaintiff applied for long term disability benefits from the Plan.

13.    On May 9, 2019, the Plaintiff completed a Work History and Education Questionnaire, in which she stated in part,

> Computer Skills: **A little.**
>
> Do you know how to type/keyboard? **Yes.**
>
> Do you use a computer at work? **No.**
>
> Do you use a computer at home? **No.**
>
> Do you know how to use the Internet? **No.**
>
> Can you use a smart phone? **No.**
>
> Do you know how to use:
> Word processing software (MS Word)? **No.**
> Spreadsheets (Excel)? **No.**
> Email (Outlook)? **No.**
> Presentation software (Power Point)? **No.**

14.    On February 10, 2020, a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" was completed by Mercedes Maki, PA-C, who stated in part,

Lift, up to 10 lbs: **Never**
Carry, up to 10 lbs: **Never**

Sit: **Up to 1 hour**
Stand: **Up to 15 minutes**
Walk: **Up to 5 minutes**

[If the total time for sitting, standing, and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?] **Laying down in pain.**

Reaching, overhead: **Never**
Reaching, all other: **Never**
Push/Pull: **Never**

Climb stairs and ramps: **Never**
Climb ladders or scaffolds: **Never**
Stoop: **Never**
Kneel: **Never**
Crouch: **Never**
Crawl: **Never**

**Environmental Limitations:**
Unprotected Heights: **Never**
Moving Mechanical Parts: **Never**
Operating a motor vehicle: **Occasionally**
Humidity and wetness: **Never**
Extreme cold: **Occasionally**
Extreme heat: **Occasionally**
Vibrations: **Never**

[Have the limitations you found above lasted or will they last for 12 consecutive months?] **Yes.**

15. On February 21, 2020, Ms. Maki also completed a Statement of Disability, wherein she

stated in part,

> I have had the opportunity to examine Ms. Peterson in a clinical setting and it is my medical opinion that **she is totally and permanently disabled from her own occupation as a Delivery Driver and from any and all full time occupations at this time.** (Emphasis added).

16. On March 11, 2020, the Defendant had a paper-file review completed by Andrew Farber,

D.O., who specializes in orthopedic surgery. It should be noted that Dr. Farber did not

speak with or examine the Plaintiff at any time, nor did he speak with any of the Plaintiff's

attending medical professionals. Upon completion of his review, Dr. Farber's opinion

stated in part that "the claimant does not have a functional impairment from September 4, 2018 to present and/or require any restrictions/limitations."

17. On March 18, 2020, a Vocational Rehabilitation Evaluation was completed by Dr. Robert Ancell, who stated in part, "it is my professional vocational rehabilitation opinion that based on the findings of her treating [nurse practitioner] and pain specialist, there are no jobs that exist that [Ms. Peterson] can perform."

18. On May 12, 2020, the Social Security Administration ("SSA") issued a favorable decision and granted the Plaintiff's claim for Social Security Disability Insurance ("SSDI") benefits, with an effective date of September 1, 2018.

19. On June 2, 2020, the Defendant approved the Plaintiff's claim for LTD benefits, with an effective start date of May 8, 2019.

20. On July 7, 2020, the Plaintiff completed an Activities of Daily Living form, in which she stated in part,

> Socks can be difficult (when getting dressed); I use a coffee table to help me get up from a seated position. I have to toss and turn all night to ease pain in back, hips, knees, groin, neck. I use my kitchen table to help me when everything is aggravated - sometimes which is almost all the time. Knee wants to give out too. All I can walk is 65 to 75 paces and then I have to sit or lay down about 20 minutes to ease all the pain.

21. On August 17, 2020, the Defendant notified the Plaintiff that she was near the end of the first 24 months of disability from her "Own Occupation", and that it would be reviewing her claim for potential continued LTD benefits under the "Reasonable Occupation" definition of disability.

22. The "Test of Disability" within the Plan as applicable to the "Reasonable Occupation" period states as follows:

> **After the first 24 months of your disability,** that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any

**reasonable occupation** solely because of an **illness**; or an **injury**; or disabling pregnancy-related condition. (Emphasis in original).

23.    The definition of "Reasonable Occupation" within the Plan is as follows:

> This is any gainful activity:
>
> - For which you are, or may reasonably become, fitted by education, training, or experience; and
> - Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**. (Emphasis in original).

24.    The Plan also includes a "Physical Examinations and Evaluation" provision, which states as follows:

> **Aetna** will have the right and opportunity to have a **physician** of its choice examine any person who is requesting certification or benefits for new and ongoing claims. Multiple exams, evaluations and functional capacity exams may be required during your disability for an ongoing claim. This will be done at all reasonable times while certification or a claim for benefits is pending or under review. This will be done at no cost to you. (Emphasis in original).

25.    On September 4, 2020, Ms. Maki completed an "Attending Physician's Statement", where she stated in part,

> Primary Condition: **Chronic back pain.**
> Objective Physical Findings: **Lower back pain, leg pain, leg weakness**
>
> Restrictions/Limitations:
> Sit: **1 hour at a time; 1 hour total per 8 hours**
> Stand: **1 hour at a time; 1 hour total per 8 hours**
> Walk: **1 hour at a time; 1 hour total per 8 hours**
>
> Bend at waist: **Occasionally (pain)**
> Kneel/crouch: **Never (pain)**
> Climb: **Never (unable to climb)**
> Drive: **Occasionally (pain)**
> Lift: **Occasionally, up to 10 lbs.**
> Reach above shoulder: **Occasionally (pain)**

26.    On May 8, 2021, the Plaintiff had reached the end of the "Own Occupation" period, and was now in the "Reasonable Occupation" period of the Plan.

27.    On May 13, 2021, the Defendant had a paper-file review completed by Kevin Kohan, D.O., who specializes in physical medicine and rehabilitation, as well as pain medicine. It should be noted that Dr. Kohan did not speak with or examine the Plaintiff at any time, nor did he

speak with any of the Plaintiff's attending medical professionals. Upon completion of his review, Dr. Kohan's opinion stated in part that he "does not support any functional impairment from 01/28/21 forward."

28. On May 26, 2021, the Defendant had an Employability Analysis Report ("EAR") completed by a Vocational Case Manager, Sara Johnson, MRC, CRC. The Defendant requested Ms. Johnson to base the functionality portion of her analysis solely on the peer record review that had been completed by Dr. Farber in March, 2020 (see paragraph 15 above). However, it should be noted that Dr. Farber's report was completed more than a year prior to the "Reasonable Occupation" period, and it was essentially overruled when the Defendant approved the Plaintiff for LTD benefits during the Own Occupation period. Due to the EAR being based solely on Dr. Farber's report, and not including any medical records or opinions from the Plaintiff's attending medical professionals, Ms. Johnson ultimately concluded that there were multiple positions that the Plaintiff could perform, including her former position as a truck driver.

29. On June 3, 2021, the Defendant issued a letter to the Plaintiff, notifying her that her LTD benefits were being terminated based on its conclusion that she no longer qualified as disabled under the "Reasonable Occupation" definition of disability. The Defendant's decision was based in part on the paper-file review completed by Dr. Kohan, as well as the EAR completed by Ms. Johnson.

30. On October 20, 2021, the undersigned appealed the termination of the Plaintiff's LTD benefits under the definition of disability for the Reasonable Occupation period, submitting additional supporting documents and medical records, and including an Addendum Statement of Disability from Mercedes Maki, PA-C, which stated in part,

> I have also had the opportunity to read Kevin Kohan, D.O.'s May 13, 2021, 'Physician Report' report and disagree with his findings that Ms. Peterson can return to full-time work in her own occupation as a delivery driver or any other full-time occupations.

31.     On November 24, 2021, as part of the appeal process, the Defendant had a paper-file review

completed by Mark Reecer, M.D., who specializes in physical medicine and rehabilitation.

It should be noted that Dr. Reecer did not speak with or examine the Plaintiff at any time,

nor did he speak with any of the Plaintiff's attending medical professionals. Upon

completion of his review, Dr. Reecer supported a specified level of restrictions and

limitations through September 15, 2021, but also concluded that from September 16, 2021

onward, that "no further restrictions or limitations would be indicated and [the Plaintiff]

could return to work with no restrictions on a full time sustained capacity". It should also

be noted that according to Dr. Reecer's report, he did not review any medical records for

the period of September 16, 2021 onward, and therefore his opinion for this period is purely

speculative.

32.     On November 29, 2021, the Defendant sent a copy of Dr. Reecer's report to the Plaintiff

for an opportunity to review and respond to the report, and on January 6, 2022, the Plaintiff

responded by providing a "To Whom It May Concern" letter from Ms. Maki, which stated

in part,

> I have read Cheryl's peer review reports and I disagree with their findings. She continues to have chronic back pain that was minimally improved with injections and nerve ablation. She remains on daily pain medication with minimal relief of her pain. **She is having difficulty being able to do activities of daily living due her pain. She would not be able to have worked with restrictions from 6/2/21-9/15/21 and she is not able to return to work full time as of 9/16/21.** (Emphasis added).

33.     On February 9, 2022, the Defendant had a second Employability Analysis Report ("EAR")

completed by Kisha Kuykendall, MS, CRC. Ms. Kuykendall was requested by the

Defendant to base the functionality portion of her analysis solely on the restrictions and

limitations provided in Dr. Reecer's November 24, 2021 report. Ms. Kuykendall's EAR concluded that there are no positions the Plaintiff could perform through September 15, 2021, but that due to Dr. Reecer's lack of restrictions and limitations from September 16, 2021 onward, that there were multiple positions that the Plaintiff could perform starting on September 16, 2021. However, it is worth repeating that Dr. Reecer's opinion for this latter period is purely speculative, as he did not review any medical records for this period.

34.    On February 10, 2022, the Defendant sent a copy of Ms. Kuykendall's EAR to the Plaintiff for an opportunity to review and respond to the report, and on February 24, 2022, the Plaintiff responded by providing a "To Whom It May Concern" letter from Ms. Maki, which stated,

> This letter is written in response to the Employability Analysis dated February 9[th] 2022, I disagree that Cheryl can return to work with no restrictions on 9/16/21 for the following jobs: transfer operator, jammer operator, stull installer or truck driver, light. **Cheryl is unable to sit for 1 hour intervals or walk for 1 hour intervals.** She constantly needs to readjust her position due to her pain. **She also needs to take narcotic pain medication to control her pain during the day. This would be unsafe to operate any type of machinery while taking pain medications.** She would be unable to crawl, kneel or squat due to her pain levels as well. **Currently Cheryl continues to have chronic pain with minimal relief from her pain medication and is unable to do many activities of daily living due to her pain levels. She is unable to return to work full time.** (Emphasis added).

35.    On March 25, 2022, the Defendant advised that it was reversing its decision to deny LTD benefits between June 2, 2021 through September 15, 2021, but maintaining the decision to terminate the Plaintiff's LTD benefits from September 16, 2021 onward. The decision stated in part,

> After review, we determined a portion of the time we originally denied should be overturned. Here's how it breaks down:
>
> - The information available in your client's claim file during the appeal review, determined the decision to TERMINATE benefit payments from June 2, 2021 through September 15, 2021 is overturned. * * *
>
> - Based on the information available in your client's claim file during the appeal review, we've determined that your client is not eligible for

10

additional benefit payments beyond September 15, 2021. Your client's claim continues to be terminated effective September 16, 2021. * * *

As part of our review, we performed an updated transferable skill analysis (TSA) using the updated medical information and vocational information in your client's claim file. It was determined that your client as of September 16, 2021, was capable of perform the occupations cited below.

| Code | Occupation | Monthly Mean Wage |
|------|-----------|-------------------|
| 921.682-022 | Transfer Controller | $5,224.26 |
| 921.683-054 | Jammer Operator | $5,224.26 |
| 869.684-062 | Stull Installer | $4,404.40 |
| 906.683-022 | Truck Driver, Light | $3,210.13 |

Based on your client's physical capacity, TSA and the employability assessment performed on February 9, 2022, it was determined that there was no viable employment matches during June 2, 2021 through September 15, 2021. Therefore, it was determined that your client was unable to perform any occupation from June 2, 2021 through September 15, 2021. However, it was determined that your client would be able to perform all the occupations listed above. These occupations remained appropriate and viable as no further restrictions or limitations were identified by the peer reviewer. Therefore, LTD benefits remain terminated effective September 16, 2021, onward.

36.    It should also be noted, that despite the Defendant having the right to request that the Plaintiff undergo an in-person physical examination and/or functional capacity examination, at no time during the Defendant's review process did it ever request the Plaintiff to undergo such an examination.

37.    In the March 25, 2022 final denial letter, the Defendant also informed the Plaintiff that her "*appeal file has been closed*" and that the Plaintiff "*can file a lawsuit under section 502(a) of a law called ERISA.*"

38.    As a result of the aforementioned wrongful actions, the Plaintiff's group waiver of life premium may have also been wrongfully denied by operation of the decision to terminate her long term disability benefits.

## COUNT I
### Claim for Benefits Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) against Defendant

39.    The Plaintiff incorporates paragraphs 1 through 38 above as if fully restated herein.

40.  ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

41.  The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

42.  The Plan has failed to pay disability benefits to the Plaintiff despite the recommendations of her physicians and disabling medical conditions.

43.  The failure and refusal of the Plan to pay the benefits owed the Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

44.  In addition, the Plan has failed to properly and thoroughly investigate the Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

45.  The actions of the Plan have caused damage to the Plaintiff in the form of the denial of long term disability benefits.

46.  In addition, because the Plan denied the payment of the Plaintiff's long term disability benefits, the Plaintiff became ineligible for other benefits provided through her employment such as pension, medical benefits, and the waiver of group life insurance premiums.

## **PRAYER FOR RELIEF**

Plaintiff requests that this Honorable Court grant the following relief:

A.  A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that the Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that the Defendant has violated the Plan and its fiduciary duties by failing to pay these benefits.

B.  A full and accurate accounting by the Defendant of all computations for the Plaintiff's employee benefits, in sufficient detail so that the Plaintiff may ascertain that his benefits are being paid in the proper amount.

C.  An Order compelling the Defendant to pay the Plaintiff forthwith the full amount of employee benefits due to her and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D.  An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E.  Such other relief as may be just and appropriate.

Dated:  August 30, 2022                          /s/ Troy W. Haney
                                                 Troy W. Haney (P48614)
                                                 HANEY LAW OFFICE, P.C.
                                                 Attorney for Plaintiff
                                                 330 East Fulton Street
                                                 Grand Rapids, MI 49503